Our next case on the agenda is number 7, case number 110350, Italia Foods v. Sun Tours. Mr. Richman. May it please the Court, Michael Richman on behalf of the Defendants Appellants, Sun Tours, Inc., Doing Business as Hobbit Travel, and Paul Grosso. Your Honors, this matter presents issues of first impression for this Court under the Telephone Consumer Protection Act, or what's commonly known as the TCPA. Under Supreme Court Rule 308, several of those issues of law were certified by the Circuit Court in Lake County. The 2nd District accepted the petition under Rule 308. The 2nd District answered some of the questions but declined to answer some of the others. There were three certified questions that, in fact, were answered by the 2nd District in connection with the TCPA. One dealing with the so-called opt-in, opt-out, acknowledgement approaches of the TCPA, and the 2nd District chose the acknowledgement approach. And the certified question before the Circuit and Appellate Courts and accepted by this Court is the issue of whether the opt-in approach under the Chair King Supreme Court case of Texas should be applied in this State. The second certified question the 2nd District addressed was the issue of the statutory penalty. Specifically, under Section 227b3 of the TCPA, and whether it constitutes a statutory penalty. And, of course, we have this Court's Landis decision, at least as a guide. The third issue that the 2nd District addressed is this question of assignability. Now, you have to understand that the way that the certified questions that the Circuit Court Judge Hoffman directed here or formulated is that you don't get to the assignability question or the statute of limitations or the tolling questions, if you will, unless you find the question of statutory penalty. But the 2nd District nonetheless did address the issue of assignability, found that 227b3 was not a statutory penalty, instead it was remedial, and then went ahead to find it necessarily was assignable, which makes sense because that's never really been our position. If there's no statutory penalty, then it's going to be assignable, especially under Kleinwort and all the cases with the Court. The 2nd District did not address several certified questions. One, dealing with the issue of the statute of limitations under the TCPA. There's a whole slew of different cases around the countries that all the parties have cited. Illinois hasn't addressed that yet. And that's whether, if it is a statutory penalty, does 13202 apply? That is the two-year statute. Or the congressional catch-all provision under 28 U.S.C. 1658, four years. That wasn't addressed. It was fully briefed. It was argued in the 2nd District. It was argued in the Circuit Court. But the Appellate Court chose not to address it, again, because it wasn't a statutory penalty, so there was no need in the Appellate Court's mind to address that particular issue. The last issue that was not addressed but was certified is this question of tolling. And, again, there's this issue of the 27-month gap in whether, under the Hess decision of the 1st District and whether under American piping, there's an allowance of tolling even when you have, in this case, 27 months where there is no proper plaintiff. But, of course, you don't get to that issue, again, unless you find there's a statutory penalty. So as to the first issue in dealing with the TCPA, the TCPA, Your Honor, is somewhat unique because we're dealing with a federal statute enacted by Congress, but it, in essence, confers upon the states the power to decide whether they want to enforce this statute or not. Now, that's the position of a number of courts. It has been addressed that Chair King is some outlier out there. The Supreme Court of Texas is the only one to have addressed this issue consistent with our position. And let me be frank, Chair King is the only case out there that, in fact, says the opt-in approach is the proper way you read 227b-3. But that misses the point a bit that we tried to point out in our brief, and that is that there are a number of circuit courts of appeals, the 2nd, the 4th, the 9th, and even the 7th in the Brill case that suggest that read 227b-3 somewhat consistent with, Chair King, they don't quite go as far, but what they give is the underlying premise that the states have, such as Illinois, the states have the power to decide whether they want to opt-in of this particular statute or not. Now, that's important because the initial premise of Chair King is that, in fact, the states have the ability to make that decision. And you look at that from the particular language of 227b-3. Now, normally it's true, as the number of the cases have held, that states have concurrent jurisdiction with federal statutes. That's not an issue here. But when you have language such as this, such as an express statutory directive, as pointed out in the cases such as in the Gulf Wall Shore case from the U.S. Supreme Court, when you have this express statutory directive, there's a different analysis. This is a unique statute, Your Honor. It's not entirely clear why Congress exactly used this language. I know people have looked at legislative history here and there, but there isn't much. It's pretty sparse. But what is clear is that this particular statutory provision is nowhere else to be found. Italian Foods couldn't find another one. We couldn't find another one. The Second District couldn't find another one. So this is a unique statute. So the language used by Congress must have some meaning, something other than there's no question that the state courts have concurrent jurisdiction in the acknowledgment approach that the Second District adopted, and that there's no choice by the state of Illinois or any other state who happens to take the same position that they can adopt the TCPA or not. You look at the language, if otherwise permitted. Well, what Chair King pretty much did is that they went to the dictionary and kind of looked at the language with otherwise permitted. Look at the word otherwise. Look at permitted. Some type of consent. Something different has to happen. If Congress just wanted all the states to say you have to enforce. Mr. Richmond? Yes, Your Honor. I do understand your language argument. Would you agree, though, that it would seem a little odd that Congress would create a private right of action that might be brought in a state court but then leave it up to the states whether to exercise that right? So you have Congress acting, and in Illinois there's not a right for the citizens, but maybe in Iowa and Indiana there is. I mean, does that strike you as a little odd? Well, Your Honor. Separate and apart from the statutory, you know, construction arguments. Your Honor raises a very interesting point, and that was addressed by the Fourth Circuit in the international science case. One of the arguments was that, wait a minute, you go to one state, you might have a remedy. You go to another state, maybe you don't have a remedy. How can that be the congressional intent? The argument that has been raised, Your Honor, is that with the language if otherwise permitted, and we keep going back to that, Congress must have meant something different, something unique. And, Your Honor, to answer your question, I do not believe, and that's consistent with the Fourth Circuit case in international science, that there was any intent by Congress, Your Honor, to create a national uniformity of the TCPA. Why? Because the concern of Congress, reading Chair King's approach, is that the concern is that if you're going to flood the courts of a state such as Illinois with TCPA cases across the board, you should at least give the states an opportunity to say, do I want these or don't? Now, let's understand, people aren't remedy-less if for some reason the opt-in. I'd like to go back to that your words of otherwise permitted, as Justice Thomas mentioned. What is the purpose of the Telephone Consumer Protection Act, and how does that language support it? Well, the purpose of the act is to regulate certain type of telemarketing abuses. In this case, it happens to be chunk faxes, if you will. That's the purpose. But understand, Illinois already has a statute on the books on that. A lot of states do. The purpose of the TCPA, Your Honor, was to supplement, if you will, the various state statutes that already existed. And the problem at the time, Your Honor, back I think in 1991 when this statute was enacted, was that if you had telemarketing going across state lines, individual states couldn't regulate what was going on outside their border. So Congress tried to fill in that interstices and say, we're going to supplement your particular statutory scheme. We have certain regulations. We have TCPA. And we're not trying to preempt you. There's a specific provision that says it's not preempted. Nothing in the states is preempted. So the purpose was to supplement. And consistent with that, Your Honor, the supplementation is to give the states a choice as to whether they want to enforce the act or not in their courts. Under the federal regulations or their own? No, it's under the federal regulations or their own. Otherwise permitted, that language, how does that relate to the purpose of the act? What does that mean? Well, what it means, Your Honor, is the states have a choice to adopt the statute or not. If they have their own particular mechanism and they're happy with it, fine. Is that what otherwise permitted means? Yes, it means something different. It means different. It means permit is consent. Approval. You need some type of approval. And what Chair King was focusing on, Your Honor, in the dictionary definition, just looking at the words, what they meant, since they're somewhat unique, since Congress has never used it elsewhere, is it must mean some type of affirmative action taken by a legislature in terms of the laws of a state. And that affirmative action has to be taken temporally. One would think when you permit something, it's before it happens. And so the argument was is that there needs to be some type of legislative action before you're going to, so to speak, adopt this particular statutory scheme. That's really the simplicity of Chair King. And there's been a lot of arguments that deal with things like the constitutional claims here. And, Mr. Richmond, with respect to the looking at the odd result here, if we go with the opt-in approach, what's wrong with the statutory construction analysis that the acknowledgement approach takes, which is basically courts have the right to structure the way this would be handled. Namely, does it go to small claims? Does it go to law division? That type of thing. What's wrong with the way they handle the otherwise permitted language? A couple things, Your Honor. The acknowledgement approach, which there are about seven states that have adopted that particular approach, Your Honor, basically says under the supremacy clause, the states have absolutely no choice. Under the supremacy clause, under Article VI, you have to adopt and enforce the TCPA. Okay. If that were the case, then what does the language, if otherwise permitted by the laws of a state, mean? If Congress wanted to, in a normal situation, say supremacy clause applies, states, you don't have a choice under the acknowledgement approach. You must enforce the TCPA. Why did they put that phrase there? That's been the $64,000 question with all the courts around the country, with the circuit courts, and people come to differing conclusions. So Your Honor's question also about the types of courts, law division, small claims, things of that nature. Well, one thing I think the TCPA did do is they left that up to the states for certain. I don't think there's a dispute even under the opt-in approach, even if you look at the Chair King approach. Chair King didn't say Congress is dictating the courts. These cases must go to a particular court because if you look at 227b3, they say bring in action in an appropriate court of the state. Then you. They bring it within wherever the particular courts of that state would put those types of cases. And that's consistent with all federalism principles that Your Honor is clearly aware of, that my able opponent has decided, the Howlett case, the Testa case, Kaplan, going back decades, that the federal government takes the state cases as they find them. That's not really an issue here. The issue is the threshold issue is if Congress meant what someone would think they'd mean, that something a little different here, some kind of action must be taken, then what did they mean? And in Justice Thomas's approach, Your Honor, to answer your question, is the problem that Chair King pointed out and all these other circuit courts of appeals. Chair King is not alone. I want to make that point in its analysis. In its ultimate conclusion, yes, it's the only one that actually is held opt-in. In its analysis of giving the states, for instance, the state of Illinois, a choice, do I want to opt in or don't I? That's a question that Congress has specifically given to the states. And under the Supremacy Clause, as we all know, you must enforce the federal law as written. And all Chair King did is they said, well, if we're going to enforce everything else in the statute, we've got to enforce if otherwise permitted. It's got to mean something. And the acknowledgment approach makes that redundant, makes it meaningless, because it reads it entirely out. So going again to the constitutional issues that were raised by the Second District and by Italia Foods, the Supremacy Clause question, as Chair King pointed out, you read the statute as it is, and as written, it says it's otherwise permitted. And as to the Tenth Amendment, that's been bandied about, the Tenth Amendment. And the interesting thing about that, Your Honor, is that we have cited a number of cases from various circuits, I think, again, the Fourth and the Ninth specifically, that have essentially rejected the Tenth Amendment, I think the Second as well. Why? Because, again, it's the element of consent. If there's one thing I want to bring across as a theme, it's this consent component that's in a number of federal courts. This consent component is even in one of the cases that they cite, the Bonita case from Judge Grady, on the issue of 1658, where Judge Grady says, well, you know, essentially, Illinois has the power to decide whether it wants to opt out or opt in to the TCPA. This element of consent is important because that's the principle, building block, on which Chair King reached its conclusion. Certainly, reasonable courts differ, ultimately, as to what if otherwise permitted might mean. But I would submit, consistent with the language, consistent with the intent and purpose of the statute, I would submit that if otherwise permitted must mean that there must be some type of affirmative action taken. Otherwise, this language is essentially meaningless, and Congress could have said, bring an action in any court. And as we know, if Congress was silent and didn't mention state or federal, there would still be concurrent jurisdiction, and we wouldn't even be making this argument today. The last constitutional argument on this was the Illinois Constitution. I know there was a lot of discussion of the Belleville-Toyota case. And respectfully, Your Honor, I don't believe that that applies here. And there is no violation of the Illinois Constitution by regulating, if you will, whether it's subject matter jurisdiction or not is unclear from all the cases, or whether it's simply a failure to state a cause of action. But the point is, is that unlike Belleville, we're not asking that somehow the General Assembly affect the subject matter of the circuit court here at all, or limit it as they did in Belleville with the, I think, characterizing the statute of limitations as jurisdictional. This is an act of Congress, and at least under both parties' belief, the Supremacy Clause generally can divest jurisdiction of a state court. Bankruptcy, ERISA, there's a dozen different issues, and this is no different. So we would respectfully request, Your Honor, as to the first certified question, that your answer answered yes. Now, on the second certified question, which deals with the statutory penalty, the question here is whether, in this case, the particular remedy being sought under 227B3 is a statutory penalty. Well, let's look at the language. The language here is important under 227B3, and applying that to the Landis or testing that with the Landis approach by this Court. In Landis, there are three elements for a statutory penalty, as Your Honors all know, and I believe, Justice Burke, you wrote the opinion on that. It's got to be an automatic award from a violation. No dispute about that. The amount has to be predetermined by the legislature, Congress, no question about that. Five hundred bucks a shot here, okay, predetermined. Here's the real issue, is that under Landis, the third prong is that the amount of the damages has to be awarded without regard to whether there was actual injury suffered by the plaintiff, and that's where the parties seem to differ here. But if you look at the statute, the statute talks about actual monetary loss or disjunctive, we all know what that means, or receive $500 in damages, whichever is greater. Now, this Court would not be alone in finding that, in fact, the $500 component is a statutory penalty. A number of courts have been cited in our briefs, Colorado and New York, that have addressed this issue. I believe the Supreme Court of Colorado in the Cruz case addressed that issue, that, in fact, analyzed it. Similar to Landis, I'm not going to say it's an identical approach, but if you review the cases, you'll see it's very similar to Landis in terms of determining what's a statutory penalty, and reached the conclusion that, well, $500, it's definitely an automatic violation, it's predetermined, and you don't need actual damages. That seems to be pretty clear here. Where the parties seem to differ is this question of, well, in Landis, there was an issue that it was the damages under the landlord-tenant ordinance was in addition to, rather than in lieu of, as we have here, or or. And that's where it seems to be the dispute between the parties. Now, the point here, Your Honor, is whether you have a dollar, 50 cents, 20 cents, or virtually nothing in terms of actual loss by the plaintiff for sending one fax, one little fax through the mail, excuse me, through the telephone, you get 500 bucks. That's what Congress decided. Some of the cases, such as the New York Court of Appeals and the Kaplan decision, said, well, it seems to be an incentive for a penalty, because it has no relationship to the amount of the real damages, and it doesn't. We all know that sending a fax and receiving a fax is use of a paper, use of some toner. Maybe it's pennies. Maybe it's a dollar or so. Whatever it is, Congress decided that you have a choice here. You can get your actual damages if you want, or you can get $500. I see my time is up here, Your Honor. Thank you. Mr. Reagan. May it please the Court, Counsel. My name is Mike Reagan, and I am one of the attorneys for the plaintiff, Italia Foods, here this morning. Illinois courts have jurisdiction to enforce the Telephone Consumer Protection Act without enabling legislation from the General Assembly. There is no doubt that a private cause of action was created, and there is no doubt that it was intended by Congress to be enforceable in state courts. The only question here this morning on this is whether the remarkably unsuccessful idea advanced by defendants should be accepted to require that the General Assembly take action before this federal right may be enforced in an Illinois court. Defendants' proposition to you today, and the only way in which it can succeed, has been squarely rejected by 12 states, the District of Columbia, and, of course, the unanimous appellate panel below. And defendants' sole case, Chair King, has been in existence for five years, and Congress has not seen fit to change the statute, which then brings into play the legislative interpretive aid of acquiescence to the courts. Of the three approaches taken to interpret the statute, opt-in, opt-out, or acknowledgement, either of those two approaches, both opt-out and acknowledgement, either one, would find approval with every other court except Chair King. I don't mean both of them would, but one or the other would find approval. And secondly, either one of those approaches, either opt-out or acknowledgement, would support affirmance of the trial in the appellate courts here. Reversal here on this point could come only through accepting the lone opinion of the Chair King Texas Court. Now, I reviewed the basics of a 308 appeal in preparation for the argument, and a 308 is not an academic exercise thrown up to this court to take its time, but rather it stems from the appeal of an interlocutory order, which is not otherwise appealable. So really the question here is not whether the question should be asked in the abstract about whether Illinois should be an opt-in state, but rather whether there is something under the law which would require reversal of the order already entered by the trial court, which is that the motion to dismiss should not be denied. And whether you regard the proper interpretation of the statute to be acknowledgement, which we suggest is the correct way, or whether you regard the proper approach to be opt-out, in either circumstance the trial court ultimately gets affirmed and opt-in does not really become an issue in the case. There are a number of weaknesses in Chair King's logical structure. In its analysis, much of its discussion is premised upon the court's ultimate conclusion at the outset that state action must be taken before the statute can be enforced. So if you read the opinion carefully, which I'm sure you will, they sort of beg the question by concluding that the language is clear and that there is a certain type of directive meeting its ultimate conclusion. Secondly, the court places a lot of emphasis there on the existence of what it calls the double redundancy. And, of course, that touches upon the interpretive aid of language should not be read to render it redundant or meaningless. And the court says, well, Chair King says, there would be a double redundancy. Now, the double redundancy would be, under the acknowledgement approach, that the if otherwise permitted language, which was the subject of several of your questions here, is a statement, an acknowledgement, the lexicon here, that the court, the state courts, the states are to enforce the cause of action unless there is a neutral rule or law of court administration which would otherwise preclude enforcement of the federal right. So the first of the two redundancies that's claimed by Chair King is that because that's the law, that the moment that you say it in the statute, that that becomes a redundancy, that there was no need to say what the law is and, therefore, there's your first redundancy. Secondly, they say that the second redundancy is that the first half of this phrase here, if otherwise permitted by the laws or rules of court of state, subsumes or means the same thing as the very next words, which is bring in an appropriate court of that state. So the Chair King court wants to write in such sparing language, wants the legislature to write such sparing language, that no lawyer would ever do it. It does mean that if otherwise permitted by the laws or rules of court means the same thing as in an appropriate court, and, therefore, that's the second redundancy. And this is just not the real world, and that, indeed, is a slender string upon which to hang the interpretation of the statute. The R.A. Ponte, P-O-N-T-E case, which we have cited, also said that this could have been a precautionary exercise on the part of, there's Hugh Griffin's train, this could have been a precautionary exercise on the part of the Congress to make clear that the federal, that this was not intended to impinge upon the neutral rules of engaging. Now, there is, the other thing that strikes me about Chair King is that it was engaged in a great deal of sweeping policy analysis. And I respectfully suggest that I think that would be at odds with the modulated approach, which this court takes to the task of statutory interpretation. The Chair King case talked about what it thought the law ought to be and what might have been on Congress's mind, but I don't think this court would take that approach. If the statute were not ambiguous and the Texas court thought it to be plain, then there's no room for policy analysis. But in the event of an ambiguity, the manner in which this court proceeds is to examine the policy only in a narrow and circumscribed way to determine what the words of the statute mean and not to go on to engage in a broader examination. Now, Chair King also did not consider the FCC's view. He just didn't mention it. Now, the charge, I've got you excited. Is the ambiguity because of the words themselves, a person or entity may, if otherwise permitted by the laws and rules of the court of the state, bring an appropriate court of the state? Are the words themselves or is the words couched in terms of what would be an odd result? Do you understand where I'm going? I understand. So if the question is, I mean, both of those things are true. You might have an odd result, but if we were to focus on what's the source of the ambiguity, I would say primarily it is driven by the words themselves, but the odd result is sort of enforcing the thought that there might be an ambiguity here. I was talking about the FCC. The FCC, Senator, excuse me, not Senator Hollings, but the FCC has said early on, and I think perhaps in 1992, that consumers may bring immediately a cause of action in state court and went on to discuss it in various other ways. And so when an administrative agency is charged with interpreting and enforcing the law, not interpreting but enforcing the law, then its interpretation of the statute is entitled to some weight, not controlling, not more than this court, but at least something to be considered. And the FCC makes it very plain, as we set out in the brief, that it thought that consumers had the right to file these actions immediately. It's also worth noting here that no state has ever opted out, and it's hard to believe that the General Assembly would want to do that here to restore the regime of junk faxes. Chair King did not pay sufficient attention to the federal and state constitutional concerns and didn't act in accord with the presumptions. Under the Tenth Amendment, state legislatures cannot be commanded to legislate. One of the questions that was asked earlier is whether it makes sense to have differing rules as you go among the states. Legislative history here indicates that this was a national problem resulting in a great deal of communication to the Congress, and the Congress intended to do something about it. And Mr. Richman's right is it was necessary to do something about it because most of these communications cross state lines, and the state is powerless to deal with those things. And that's why Congress had to step in and act. The presumptions, rather than spending time just simply reciting the constitutional provisions here, and Mr. Richman and I agreed earlier that there are so many issues in this case that any one of them could occupy the time this morning. But let me drive by the constitutional considerations and touch briefly upon the presumptions that arise because of the various constitutional considerations here. So a court must favor the construction that preserves state court jurisdiction because Congress can be seen to divest state courts of jurisdiction only by explicit statutory provisions. So the presumption is that you have to have an explicit statutory provision before Congress is seen as divesting the state courts of jurisdiction. So if you determine ambiguity, and if in the proverbial balancing of scales, which has been done how many thousand times at this podium, if there's only a little tip, that's not enough, because the presumption is there has to be an explicit direction from the Congress in order to divest the state court of jurisdiction. Only a neutral jurisdictional rule, and this gets right to the heart of the if otherwise permitted language, only a neutral jurisdictional rule will be deemed a valid excuse, which is the words of the Supreme Court cases, for departing from the default assumption that state courts have inherent authority to adjudicate claims arising under the laws of the United States. And lastly, and I don't put a lot of weight necessarily on the phrasing of this, but there is a deeply rooted presumption, and again borrowing that phrase from the federal cases, in favor of concurrent state jurisdiction. Now we, obviously there's a problem with my formulation there because it's not concurrent, but it is still state court jurisdiction. So we request that the appellate court be affirmed, which also affirms the trial court, and the first question be answered in the negative. The next question is 2 and 2A. I'm having a little difficulty, Mr. Reagan, understanding your argument with respect to this concurrent jurisdiction. I believe Mr. Richmond would say it's the states if they want it. It's not that the federal government is precluding an action in state court. They're saying it's the states if they want it. Yes. So how does that tie in with your argument? Well, as I said, there was a certain weakness in my raising that point, but we get to the point there is this deeply rooted presumption that the state courts can enforce federal law. Now it's phrased in terms of concurrent jurisdiction, and we believe the most typical reading of the Act is that there is not concurrent jurisdiction. It is only state court jurisdiction. So the presumption would really go to the fact that Congress has the power to establish state jurisdiction, and I would like to withdraw, if I may, the word concurrent, because that's really not what we're dealing with under the statute here. So the second question, what the appellate court did here was to say that the ---- I'm sorry, Mr. Reagan, but if I can back you up to question one yet. Okay. On this key phrase, if otherwise permitted by law, it seems to me that, not that you haven't argued this, but one approach to analyze it is what does that mean as it's stated versus if the statute had said if permitted by state law. If you focus on the word otherwise itself, does that not mean things like something other than what the federal statute did, meaning is the claim brought within the state statute's statute of limitation? Is it brought within our rules of who has proper standing? Is it procedurally brought in the proper fashion? Those kinds of things. Yes. Yes. I mean, there could be a panoply. I think when Mr. Richmond gets back up, he's going to say, well, it can only mean which court you go to. But I don't think it's that. I think that it is an attempt to wrap the congressional arms, metaphorically, around any number of possibilities of neutral rules of administration of the state courts. And the principle here is that the Congress takes the state courts as it finds them. And so rather than focusing only on venue or something like that, it's simply whatever your rules might be throughout 50 states, if they are of neutral application, then that's the other if otherwise permitted meaning. Well, just to follow up and maybe segue into your second argument on the question of the statute of limitations, I'm not positive on this, the federal statute doesn't impose it. Doesn't what? Does it or does it not establish a statute of limitations? Yes, it does. We believe strongly and urge that there is a great deal of clarity and ease in this court's reaching the conclusion that the federal statute applies. And it also is prefaced by similar language, a little different, but it says unless otherwise provided by law. And then we have cited the Jones case, a federal case, which says that that phrase, unless otherwise provided by law, is to be narrowly interpreted. And that is that the court is to reach out to attempt to apply the four-year federal statute of limitations to a federal act, unless it is clearly provided to the contrary. Because doesn't a statutory claim versus a remedial one have a different statute under Illinois law? It does. And I'll leave it at that. Okay. But it does, but you don't have to decide that question if you decide that the federal act applies, the federal statute, and you simply don't reach that. So what the court did here, what the appellate court did, was looked at the first part of question two and then what was specifically denominated as 2A and says we don't, I forget the court's exact words, but it was basically, it's inartfully drawn or something like that. And the court then expressed its own understanding of those two questions, which we submit was a correct understanding. And the court said, in essence, the parties ask us to resolve whether the TCPA claim was assignable, and specifically in this case whether Eclipse, which was the first plaintiff here, properly assigned when Eclipse was sold in the routine course of business, whether its sole shareholder, owner, and president, Inman, retained then this cause of action. So was that assignable? And the court, the appellate court, said that it would engage in two approaches because it wasn't sure which approach this court would take. So I suggest in the limited time remaining that perhaps this case presents the occasion for this court to state that the public policy test of Kleinwert-Benson v. Quantum is the controlling test to determine whether a cause of action is assignable. And in my reading of the cases is that we are on that path, and it would greatly clarify the law. And under Kleinwert, assignability is the rule, and non-assignability is the exception, which are words from the statute. The only causes of action that are not assignable are torts for personal injuries and actions for other wrongs of a personal nature, such as those that involve the reputation or feelings of the injured party. And the court goes back to citing a case called Ackley from 1897, which remains a vibrant case and has surprising vitality. And these limitations, according to Kleinwert, are based primarily on public policy concerns. And then Kleinwert goes on to say that in determining whether a particular assignment violates public policy, courts apply a strict test. The power to invalidate any part of an agreement on the basis of public policy is to be used sparingly, which was, I believe, the basis of one of Justice Carmier's coverage opinions, and that the outcome depends on the particular facts and circumstances of each case. So I suggest to the court that the rule coming out of this case ought to be that Kleinwert slash public policy is the test, and then the real test is looking at the facts of each case. And at that point, you don't have to get into assigning labels or intermediate categories of penal, personal, and things like that. The facts of this case match up very well with Kleinwert. Mr. Himman was not out shopping for the cause of action, just like in Kleinwert when the business was sold, he retained it. This color is going to change here in a second. I'd like to suggest this also, that if Kleinwert and the public policy analysis are declared to be the sole test, and I suggest it would be, then this court doesn't have to take up the question of whether the TCPA is penal rather than remedial. The only inquiry would be whether this assignment violated public policy. And there is not a robust body of law which draws on this penal thing. It's really they look at penal cases such as Landis or statute of limitations cases, not assignability cases. And you don't have to reach the question whether it's penal for any of the issues here before you because it's not going to become relevant to assignability under the Kleinwert test, and it is not relevant to the statute of limitations if you take what I think is the best rule here, which is to say that the federal statute of limitation applies. So in either of those cases, you simply don't reach the question of penal versus remedial. Time's up. If you don't have any questions, I will sit down. Okay. Thank you, Mr. Reagan. Mr. Richmond. I think, Your Honor, contrary to my able adversary's position, is the issue of statutory penalty is crucial, and that's how the certified questions really were formulated when we did this a number of years ago. And to simply suggest that we don't have to deal with statutory penalty, we'll reach all the other questions anyway, such as Kleinwert, I'd suggest that's not exactly what the intent at least was of the certified questions. Certainly, Your Honors have the power to do what you want under Rule 308. But to me, the question, if you look at the certified questions, it has to be a statutory penalty before you get to the next inquiries, as I mentioned before. Let me address a couple of the points made. This issue of, of course, Chair King being in the minority, as I pointed out before, yes, it's the minority, but as we pointed out, the fact that it's in the minority doesn't necessarily make it wrong, and the fact that it's in the minority doesn't necessarily mean that this Court should cavalierly disregard it. This Court has taken minority positions on a whole slew of issues around the country, if we cite it in our brief. So that shouldn't be the touchstone of decision-making. We don't add up who's right on the basis of who has more decisions around the states, I would suggest, than the other. The issue of the acknowledgment approach is, I think the colloquy I had with Justice Thomas a few moments ago, I mean, here's the point, is that the if otherwise permitted language must mean something more than simply establishing or reestablishing, if you will, settled decades of concurrent, or not concurrent, of state court jurisdiction when Congress is otherwise silent about what court you can be in. If Congress didn't have the if otherwise permitted language, then there wouldn't be an issue here that the circuit courts of Cook County unquestionably would have jurisdiction. You know, which courts is a different issue, and Congress doesn't get into determining which particular courts or which venue. The issue is, if otherwise permitted doesn't mean that there has to be some power or consensus, Justice Thomas suggested, something given to the states to make that decision, which is consistent with the sparse legislative history that we have here, then I would suggest that you're basically reading out under settled principles of this court, such as J.P. Morgan that we've cited, that you look at the dictionary definitions of these words. Each word must mean something, and if you apply the acknowledgment approach, as the Second District did, and they're not alone, I understand that, but the problem with redundancy that Chair King talked about, I would submit, is an important position here to determine in the analysis. Now, counsel talked about the presumptions. Yes, there are presumptions. I mentioned those in my opening remarks. We mentioned them all over the briefs. That's the golf-off short case from the U.S. Supreme Court. Testa, Howlett, you got them all. But it misses the point. I think ably, again, as Chair King points out, that the fact is we have language here that does satisfy the express statutory directive. As I pointed out, this is a unique statute. It's undisputed. Excuse me, Mr. Richman. Yes, Your Honor. Would you agree that if we find an ambiguity and go to Senator Howlett, Senator Howlett is one of the TCPA sponsors, language, that it's problematic to your position? He says the salient point of his remarks. The bill does not, because of constitutional constraints, dictate to the states which court in each state shall be the proper venue for such an action, as this is a matter for state legislators to determine. Nevertheless, it is my hope that states will make it easy as possible for consumers to bring actions, preferably in small claims court. Your Honor, and I understand Your Honor's position, but what Chair King did is that they looked at that very language. And the last phrase, I think, talking about the states will act reasonably in permitting the citizens to use the courts, the way Chair King interpreted that, the best that anybody can get into somebody's mind as to what you meant, is that that phrase there, Your Honor, was consistent with the opt-in approach, that it is the hope, that the states will act reasonably in allowing their citizens to enforce the statute, okay? And the way Chair King read that phrase, that portion of Senator Hollings' comments, Your Honor, was consistent with the position of Chair King, that in fact, that's consistent with the opt-in approach, that some type of consent or power, the hope, the anticipated hope of Congress, the states will act reasonably, if it were just, you don't have a choice, you've got to enforce the statute, there would have been no need for any of this type of language, there would have been no need for if otherwise permitted, and frankly, it would have been a very simple statute, states, you don't have a choice, under the acknowledgement approach. That's the problem, respectfully, with the acknowledgement approach, is that this takes this language and essentially makes it, as both parties seem to suggest, redundant, or doubly redundant, whichever phrase you want to use, and that's the reason, Your Honor, that I submit that the opt-in approach, with all of its ancillary cases from the various circuit courts of appeals that we've set forth, that allow the states the power, and that's the key. Now, the point made about the FCC's review, and that that wasn't addressed by Chair King, a couple quick points on that, in the FCC, it is the second district even acknowledged, that the FCC statement, this little, parsed statement, or passage, if you will, it wasn't a report, it wasn't a regulation, it was just a couple of sentences, should be given very little, if any, deference. Why? It didn't address this issue. It didn't address the issue of opt-in, opt-out, acknowledgement, it has one sentence. So, for Chair King not to address this FCC's statement, the isolated statement, I think is even consistent with any deference that normally might be given to an administrative decision. It must be a reasoned decision from the courts that we've cited, before any court decides to give deference to an administrative agency. There's no reason given here, therefore, I understand why Chair King decided it wasn't worth the decision, or discussion. The deeply rooted presumption that counsel talks about is correct. There is a deeply rooted presumption of state and federal jurisdiction. You have RICO cases that now have state courts. You have 1983 cases in which state courts can adjudicate federal claims. None of those provisions have this language. And that, from the beginning and the end, if there's one thing I want to make clear, is that that phrase must mean something. It has to have an independent meaning, otherwise, I'm not certain why Congress put it in. Chair King at least gave a reasoned explanation. The other circuit courts of appeal of which Italia Foods is, I don't know if they've cited anything to the contrary, have acknowledged that some form of consent by the states in order to activate the statute is necessary. Thank you, Your Honor. Thank you, Mr. Richman. Thank you, Mr. Reagan, for your arguments today. Case number 110350, agenda number 7, Italia Foods v. Sun Tours, is now taken under advisement.